UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                    :

ACCESS 4 ALL, INC., a Florida not-for-profit
corporation, and NELSON STERN, Individually,     :     04 Civ. 3683 (KMW) (DF)

                   Plaintiffs,     :     **REPORT AND RECOMMENDATION**

         -against-         :

                                      :

THIRTY EAST 30th STREET, LLC, a New York
Limited Liability Company,               :

                 Defendant.     :
------------------------------------------------------------------------X

**TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:**

This matter was originally referred to me on consent, pursuant to 28 U.S.C. § 636(c), to set an award of attorneys fees for plaintiffs Access 4 All, Inc. ("Access 4 All") and Nelson Stern ("Stern") (collectively, "Plaintiffs"), following the parties' entry into a Consent Decree. In the Consent Decree, however, defendant Thirty East 30th Street, LLC ("Defendant") expressly reserved the right to argue, in connection with any attorneys' fees application, that Plaintiffs lacked standing to bring this action. When Plaintiffs made their fee application, Defendants in fact raised the issue of standing in opposition to that application. At that point, Judge Wood, who had initially approved the Consent Decree, requested that this Court provide a Report and Recommendation on the question of whether Plaintiffs had standing to commence the action in the first instance. For the reasons set forth below, I recommend that the Court vacate the

Consent Decree and dismiss Plaintiffs' fee application, on the ground that Plaintiffs lack standing.[1]

## BACKGROUND

This action was commenced under the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA").  Plaintiff Access 4 All is a non-profit Florida corporation whose membership "include[s] individuals with disabilities as defined by the ADA."  (Complaint, filed May 14, 2004 ("Compl.") (Dkt. 1), ¶ 8.)  The organization's purpose is to represent its members' interests by ensuring "that places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities."  (*Id.*) Plaintiff Stern is a New York resident and is a member of Access 4 All.  (*Id.* at ¶ 9.)  Stern has multiple sclerosis and uses a motorized scooter for mobility.  (Affidavit of Nelson Stern, sworn to Jan. 20, 2005 ("Stern Aff."), attached to Plaintiffs' Application for Attorneys' Fees, filed Jan. 24, 2005 ("Pl. App."), as Ex. 9, ¶ 2.)  Stern has been named as an individual plaintiff not only in this suit, but also in numerous other lawsuits brought under the ADA by Access 4 All and other disability rights groups, challenging the alleged lack of accessibility of a large number of places of public accommodation in New York.  (*See* Affidavit of Franklin R. Kaiman, Esq. in Opposition to Plaintiffs' Application for Attorneys' Fees, sworn to Feb. 16, 200[5] ("Kaiman Aff."), ¶ 35 and Ex. E thereto.)

Plaintiffs brought this particular action against Defendant as the owner and operator of a New York City hotel, the Thirty-Thirty Hotel (the "Hotel"), located at 30 East 30th Street, New

---

[1] The Court need not reach, and takes no position on, the question of whether the Consent Decree, if vacated, would still constitute a valid and enforceable agreement between the parties.

York, New York.  (Compl. ¶ 12.)  On February 25, 2004, Stern apparently checked into the Hotel.  (Stern Aff. ¶ 3.)  Alleging that he did not stay for the night because he found the hotel to be inaccessible (*id.*), Stern, together with Access 4 All, then proceeded to commence this action, seeking injunctive relief pursuant to the ADA.  Although the ADA does not provide a private right of action for damages,[2] Stern is himself an attorney and claims to have acted in this case both as a named plaintiff and as co-counsel, purportedly entitling him to recover personally a certain amount of attorneys' fees for his work on the case.  (*See* Pl. App. at 8-9 and Ex. 5 thereto.)

In the Complaint, filed May 14, 2004, Stern alleged that he encountered architectural barriers at the hotel, which "effectively denied or diminished [his] ability to visit the property and . . . endangered his safety."  (Compl. ¶¶ 9-10.)  In addition, Stern alleged that he planned to return to the hotel "to avail himself of the goods and services offered to the public at the property" (*id.* ¶ 9), and "to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination" (*id.* ¶ 14).  For its part, Access 4 All contended that it and its members had suffered and would continue to suffer direct and indirect injury as a result of the Hotel's alleged failures to comply with the ADA.  (*Id.* ¶ 8.)  Access 4 All claimed that it had standing to bring this action in its own right because one or more of its members had suffered an injury. (*Id.*)

---

[2] Title III of the ADA grants a private right of action "to any person who is being subjected to discrimination on the basis of disability" in violation of Title III, or "who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title."  42 U.S.C. § 12188(a)(1).  The provision gives individuals the right to seek injunctive relief but not damages.  *See id.*

3

On November 23, 2004, the parties entered into a Consent Decree (Dkt. 13), in which Defendant agreed to numerous remedial measures to rectify its alleged ADA violations. According to Defendant, it was at all times willing to make any modifications necessary to comply with the ADA (*see* Affidavit of Kevin Maloney, sworn to Feb. 15, 200[5] ("Maloney Aff."), ¶ 8), and it was therefore frustrated that Plaintiffs had neither approached it prior to bringing suit nor responded to its counsel's proposal to address the issues raised in the Complaint (*see* Kaiman Aff. ¶¶ 62-68 and Ex. D thereto). Under the circumstances, Defendant balked at paying Plaintiffs attorneys' fees, including those fees that were being sought by Stern. (*See* Defendant's Memorandum in Opposition to Plaintiffs' Application for Attorneys' Fees, filed Feb. 17, 2005 ("Def. Mem."), 18-19.) In negotiating the Consent Decree, Defendant thus indicated its desire to be able to argue against the imposition of fees on the basis of any defenses that would otherwise have been available to it, including Plaintiffs' lack of standing. Ultimately, while the parties agreed to place the matter of fees before a magistrate judge for final resolution, they also agreed, in the Consent Decree, to an express reservation of Defendant's right to contest standing in connection with any fee application:

> The issue of whether Plaintiffs are entitled to recover attorneys [*sic*] fees, costs and expert fees, from Defendant pursuant to ADA Section 12205 (*subject to any all Defendant's defenses thereto including without limitation the defenses that Plaintiffs lack standing,* the lack of need for court intervention or a Consent Decree and Defendant's good faith efforts to comply with the ADA and ADAAG) and, if so, the amount of such attorney's fees, costs and experts fees, shall be determined by a Magistrate Judge and the parties agree that the Magistrate Judge may enter a final judgment pursuant to 28 U.S.C. § 636(c).

(Consent Decree ¶ 38 (emphasis added).)

4

On January 4, 2005, Judge Wood issued an Order approving and entering the Consent Decree, and, in accordance with the parties' agreement, referring the case to me for the purpose of determining whether Plaintiffs were entitled to attorneys' fees and costs pursuant to the ADA, 42 U.S.C. § 12205, and, if so, the amount of such fees and costs.  (Dkt. 15.)  On January 24, 2005, Plaintiffs filed their application for attorneys' fees (*see* Pl. App. (Dkt. 17)), which Defendant then opposed by arguing, *inter alia*, that Plaintiffs were not entitled to fees because they lacked standing (*see* Def. Mem. (Dkt. 23)).  As noted above, Judge Wood then referred the question of standing to me for a report and recommendation (Dkt. 31), given that any finding that Plaintiffs lacked standing would call into question the validity of the Consent Decree itself.

## DISCUSSION

### I.    APPLICABLE STANDARDS

#### A.    Constitutional Standing Requirements

Standing is an essential component of the case-or-controversy requirement of Article III of the Constitution.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To satisfy Article III's standing requirements, a plaintiff must show that:  (1) plaintiff has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id.* at 560-61.  The party invoking federal jurisdiction bears the burden of establishing the elements of standing, *id.* at 561, and a plaintiff must have standing at the time a lawsuit is filed, *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-91 (2000); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993).  Further, litigants may not base

5

Article III standing on mere "general averments" and "conclusory allegations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In the context of ADA litigation, a plaintiff's awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is considered an injury in fact. *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, No. 04 Civ. 7497 (KMK), 2006 U.S. Dist. LEXIS 75664, at *14 (S.D.N.Y. Oct. 12, 2006) (citations omitted); *see also Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."). Courts considering ADA claims have found that disabled plaintiffs who had encountered barriers at public accommodations prior to filing their complaints have standing to bring claims for injunctive relief "if they show a plausible intention or desire to return to the place but for the barriers to access." *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518 (MBM), 2003 U.S. Dist. LEXIS 5145, at *21 (S.D.N.Y. Apr. 2, 2003); *see id.* at *21-24 (citing cases). Although, in the context of Title III of the ADA, plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers. *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) (citing *Steger v. Franco*, 228 F.3d 889, 892 (8th Cir. 2000)).

In contrast, plaintiffs lack standing when they fail to allege "an immediate and real threat of future injury." *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001). Thus, courts have found

that plaintiffs do not have standing to seek injunctive relief under the ADA when they fail to demonstrate a plausible intent or desire to return to the place where they had previously encountered an ADA violation, or fail to show a likelihood of discrimination should they return to that place. *See Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at \*24 n.4 (citing cases). In order to be "plausible," a plaintiff's intent to return to the place of the purported violation must also be demonstrated with reasonable specificity; speculative "'some day' intentions" to return are insufficient. *Defenders of Wildlife*, 504 U.S. at 564. Further, as a plaintiff must show that his or her injury is "concrete and particularized," meaning that "the injury must affect the plaintiff in a personal and individual way," *Defenders of Wildlife*, 504 U.S. at 560 n.1, courts have held that plaintiffs bringing ADA claims to remove barriers to access have standing to challenge only those violations affecting their particular disabilities, *see Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at \*29-30; *see also Steger*, 228 F.3d at 893 (8th Cir. 2000) (explaining that granting plaintiff standing to seek relief for every ADA violation on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III).

### B.    Associational Standing

An association has standing to sue on behalf of its members when (1) at least one of its members has standing to sue in his or her own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Bldg. & Constr. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006). The third prong of the *Hunt* test is a not a constitutional

requirement, but rather a matter for prudential consideration. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996).

In order to show sufficient "injury" to sue under the first prong of the *Hunt* test, an association must show that "one or more of its members has suffered a concrete and particularized injury." *Bldg. & Constr. Trades Council*, 448 F.3d at 145; *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."); *Southside Fair Hous. Comm. v. City of New York*, 928 F.2d 1336, 1341-42 (2d Cir. 1991) (same). Under the third prong of the *Hunt* test, an individual is required to participate in a suit when the claim asserted requires "'individualized proof,' such as claims for damages." *Bldg. & Constr. Trades Council*, 448 F.3d at 150 (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004)). When an association seeks a purely legal ruling, "its claims do not require 'individualized proof' . . . [and] [t]he third prong of the *Hunt* test for associational standing is . . . clearly satisfied." *Id.*

In addition to the third prong of the *Hunt* test, there are three other well accepted prudential limitations on standing: (1) there is no jurisdiction over generalized grievances; (2) a plaintiff may not rest a claim for relief on the rights of a third party; and (3) grievances must fall within the zone of interests protected by the relevant statutory provision. *See Access 4 All, Inc. v. Trump*, 2006 U.S. Dist. LEXIS 75664, at *30-31 (citing *Small*, 388 F. Supp. 2d at 87); *see also LaFleur v. Whitman*, 300 F.3d 256, 269 n.2 (2d Cir. 2002) (noting that a plaintiff may not assert the rights of a third party). As a corollary to the second of these

prudential limitations, courts have often declined to recognize the standing of associational ADA plaintiffs when the claims they assert are identical to those of the individual plaintiffs in the case. *Access 4 All, Inc. v. Trump*, 2006 U.S. Dist. LEXIS 75664, at *31; *see Disabled in Action*, 2003 U.S. Dist. LEXIS 51545, at *33 (dismissing associational plaintiff because its claims were identical to those of the named plaintiffs and individuals were "better plaintiffs"); *Access 123, Inc. v. Markey's Lobster Pool, Inc.*, No. Civ. 00-382, 2001 U.S. Dist. LEXIS 12036, at *11 (D.N.H. Aug. 14, 2001) (finding that association plaintiff lacked standing because it merely repeated claims of the member plaintiff).

## II.    PLAINTIFFS' STANDING

### A.    Reservation of the Defense that Plaintiffs Lack Standing

As an initial matter, Plaintiffs argue that Defendant waived its right to contest Plaintiffs' standing by failing to raise this argument prior to signing the Consent Decree. (*See* Plaintiff's Supplemental Notice of Filing, dated March 15, 2006 ("Pl. Supp."), at 2.) According to Plaintiffs, by signing the Consent Decree and requesting that the Court enter and approve it, Defendant conceded the Court's jurisdiction and thereby Plaintiffs' standing. (*Id.* at 3.)

As a general rule, parties who enter into a consent decree "waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Unlike most issues, however, "[t]he question of standing is not subject to waiver." *United States v. Hays*, 515 U.S. 737, 742 (1995). This is because, "irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (citing *Thompson v.*

*County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)).  As standing is a jurisdictional prerequisite, "arguments for or against standing may not be waived."  *Wight*, 219 F.3d at 90 (citing *Thompson*, 15 F.3d at 248)); *see Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 493 (S.D.N.Y. 2003) ("[T]here are certain issues that can never be waived, such as subject matter jurisdiction and standing."); *Romeu v. Cohen*, 121 F. Supp. 2d 264, 273 (S.D.N.Y. 2000) (explaining that standing is jurisdictional and not subject to waiver); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 103 (S.D.N.Y. 1997) ("Standing is a jurisdictional matter which must be resolved by the court; parties cannot either waive or confer standing by agreement.").

Thus, in *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp. 2d 1048 (C.D. Cal. 2006), which also involved a plaintiff seeking attorneys' fees after the parties entered into a consent decree resolving the issues concerning defendant's alleged ADA violations, the court found that it was necessary to address the question of standing on plaintiff's motion for attorneys' fees.  *Id.* at 1049-51.  As that court explained:  "It is of no consequence that the parties filed a consent decree . . . .  The Court cannot overlook [the question of standing] simply because a consent decree has been signed."  *D'Lil v. Best Western Encina Lodge & Suites*, Case No. CV 02-9506 DSF (VBKx), 2006 U.S. Dist. LEXIS 36068, at *7-8 (C.D. Cal. Mar. 6, 2006); *see id.* at *16-19.

Further, even if standing *were* an issue that could be waived by the parties' entry into a consent decree, *see Access 4 All, Inc. v. Grandview Hotel L.P.*, CV 04-4368 (TCP) (MLO), 2006 U.S. Dist. LEXIS 29574, at *5-8 (E.D.N.Y. Mar. 23, 2006) (finding that, by signing a consent decree, the defendant "implicitly waived its standing claim"), the stipulated Consent Decree in

this case contained an explicit reservation of Defendant's right to raise Plaintiffs' lack of standing as a defense to Plaintiffs' claim for attorneys' fees (*see supra* at 3 (quoting Consent Decree ¶ 38)). Given that explicit reservation, the Court cannot, in any event, find a waiver of standing here. Indeed, even in *Grandview*, where a waiver of standing was found, the court suggested that the defendant could have avoided that result by inserting language into the consent decree that expressly reserved its right to contest standing – which is precisely what Defendant has done in this case. *See Grandview*, 2006 U.S. Dist. LEXIS 29574, at *7 ("[N]othing in the Consent Decree explicitly reserves to Defendant this right. If the parties had intended to make such a reservation, it should have been included in the document."). As Defendant in this case has clearly reserved its right to contest standing, the Court must consider the issue.

### B.    Plaintiffs' Burden of Proof

Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). As the elements of standing are not mere pleading requirements, but rather are an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the particular stage of the litigation. *Defenders of Wildlife*, 504 U.S. at 561. Ultimately, the party asserting subject matter jurisdiction must prove that the court has such jurisdiction by a preponderance of the evidence, *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)), but, where the issue of standing is raised as a preliminary matter,

it may, at times, be appropriate for the Court to proceed based only on a preliminary finding. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-89 (2d Cir. 2006) (observing that the district court has "leeway" as to the manner in which it may handle a standing issue raised early in the litigation).

In fact, the issue of standing is typically raised before the Court at an early stage, on a preliminary motion under Fed. R. Civ. P. 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction. *See Alliance for Envtl. Renewal*, 436 F.3d at 88 n.6 (2d Cir. 2006) (noting that the proper procedural route for challenging standing is a motion under Rule 12(b)(1)). Plaintiffs argue – and Defendant does not challenge – that, in evaluating the standing issue here, the Court should apply the standard of proof applicable to a motion to dismiss. (*See* Plaintiff's Response to Defendant's Memorandum in Opposition to Plaintiffs' Application for Attorneys' Fees, dated Mar. 2, 2005 ("Pl. Reply"), at 4).) While, in the Court's view, it makes sense to construe Defendant's challenge as if it were brought under Rule 12(b)(1), *see Alliance for Envtl. Renewal*, 436 F. 3d at 88 n.6, the Court does not adopt Plaintiffs' position, to the extent Plaintiffs may be suggesting that, in order to satisfy their burden on standing, they need do no more than show that standing was adequately pleaded in their Complaint.

In this case, Defendant has made a "factual challenge" to Plaintiffs' standing, "not merely a facial challenge that accepts the jurisdictional facts pleaded and challenges only their sufficiency." *Alliance for Envtl. Renewal*, 436 F.3d at 88 n.7. Accordingly, it would, in any event, be inappropriate for the Court to apply a standard that looks only within the four corners of the Complaint. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (explaining that, when a question of the District Court's jurisdiction is raised, "the court may inquire, by affidavits or

otherwise, into the facts as they exist"); *Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (finding that, where, on a motion to dismiss, factual issues were raised as to subject matter jurisdiction, it was error for the court to have accepted "the mere allegations of the complaint" as a basis for finding jurisdiction; rather the court "should have looked outside the pleadings" to the parties' evidentiary submissions and made any necessary findings of fact). Moreover, given that factual issues have been placed before the Court, the Court may not simply draw inferences from the Complaint that are favorable to Plaintiffs.  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992) (explaining that, on a motion to dismiss for lack of subject matter jurisdiction, argumentative inferences favorable to the party asserting jurisdiction should not be drawn).

In addition, it should be noted that the parties to this case have already resolved any substantive disputes regarding the Hotel's compliance with the ADA, and thus the case comes to the Court in an unusual procedural posture.  At this time, there would be no point in deferring a final determination as to Plaintiffs' standing to a later stage of the litigation, as nothing other than attorneys' fees remains in this case to be adjudicated.  Moreover, having been placed on notice that the Court would consider the standing issue, Plaintiffs have made evidentiary submissions to the Court in support of their argument that they have standing.  It is proper for the Court to consider whether that evidence is sufficient to satisfy Plaintiffs' burden of proof.

In the present posture of this case, the Court may, but is not required to, hold an evidentiary hearing on the standing issue. "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939), *cited with approval in Alliance for Envtl. Renewal*, 436 F.3d at 87-88. The Court may conduct an evidentiary hearing if it finds that a hearing is necessary, or the court may decide the matter on the basis of affidavits. *See Alliance for Envtl. Renewal*, 436 F.3d at 88; *see also Filetech S.A.*, 157 F.3d at 932 ("The district court should consider all the submissions of the parties and may hold an evidentiary hearing, if it considers that such a hearing is warranted, in resolving the question of jurisdiction."); *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) ("[T]he court may conduct whatever further proceedings are appropriate to determine whether it has jurisdiction. It can, for example, decide the matter on the basis of affidavits or it can hold an evidentiary hearing." (citations omitted)). In this instance, and despite the fact that Plaintiffs are sophisticated and well experienced in these types of matters, the evidence submitted by Plaintiffs is patently insufficient to demonstrate that they have standing to pursue their ADA claims before this Court. Under the circumstances, it is unnecessary for the Court to conduct a hearing.

## C.    Individual Standing of Stern

The specific question for the Court is whether Stern has satisfied the first requirement for standing, *i.e.*, an "injury in fact." Defendant argues that Stern does not have standing primarily because, at the time this lawsuit was filed, he did not have a plausible good faith intention to return to the Hotel to utilize its facilities, but for the alleged ADA violations. (Def. Mem. at 3.) In opposition to Defendant's challenge to Plaintiffs' standing, Stern has submitted an affidavit,

attesting to his intention to return to the Hotel. (*See* Stern Aff., ¶¶ 4, 6, 7.) As Defendant is correct that the injury-in-fact requirement for standing requires a plaintiff to show "a *plausible* intention or desire to return to the place but for the barriers to access," *Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at *21 (emphasis added), the Court must evaluate the plausibility of Stern's professed intention.

Although "no standard has been established for the necessary degree of 'likelihood' that an ADA plaintiff will return, nor a specific number of times per year that plaintiff will visit the facility, nor even how far forward in time should be considered in determining whether the injury might be 'imminent,'" *D'Lil*, 415 F. Supp. 2d at 1052-53 (citing *Defenders of Wildlife*, 504 U.S. at 564 n.2), courts have considered the following factors to be relevant: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant," *D'Lil*, 415 F. Supp. 2d at 1053 (citation omitted); *see also Access 4 All, Inc. v. Wintergreen Commercial P'ship*, Civ. Action No. 3:05-CV-1307-G, 2005 U.S. Dist. LEXIS 26935, at *9-10 (N.D. Tex. Nov. 7, 2005) (same); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252-53 (M.D. Fla. 2003) (citing factors such as past history of use and residence in the area of the establishment).

In evaluating these factors in this case, the Court turns to the affidavit that Stern has submitted to supplement the allegations made in the Complaint. As noted above, on the question of Stern's intention to return to the Hotel in the future, the Complaint alleged merely that Stern planned to return "to avail himself of the goods and services offered to the public at the property" (Compl. ¶ 9), and "to assure himself that this property is in compliance with the ADA

so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination" (*id.* ¶ 14). Stern's brief affidavit adds little to make these general averments more concrete, although he does now assert: (1) that he intended to return to the Hotel within the following 12 months, and again within the following 24 months, to find out if the Hotel was complying with the Court-ordered Consent Decree, and to enjoy himself as a guest at the Hotel (*see* Stern Aff. ¶ 4); (2) that he "frequently go[es] to hotels in New York for personal and business reasons," including for the purpose of using the hotels' amenities "such as their dining facilities or their conference room[s] when attending a conference or their ballrooms when attending a party," and that he planned to return to the Hotel for personal and business reasons (*id.* ¶¶ 5, 7); and (3) that he was "in the process of writing a comprehensive book on accessible public and private accommodations in New York City," and that, prior to filing this lawsuit, "it had been and continue[d] to be [his] definitive intent to return to [the Hotel] approximately once a year to keep [his] book current and to take advantage of the hotel and its amenities and to report its condition for use by the disabled" (*id.* ¶ 6).

Considering first the factor of "proximity," the Court notes that Stern lives in New York City, which weighs against finding that Stern had a plausible intention to return to the Hotel, as "[g]enerally one does not stay in a hotel that is close to one's residence." *D'Lil*, 415 F. Supp. 2d at 1056; *cf. Wintergreen Commercial P'ship*, 2005 U.S. Dist. LEXIS 26935, at *11 (finding the proximity factor inapplicable where the property at issue was a hotel). In cases where the public accommodation at issue has been a restaurant, close proximity of the plaintiff's residence will generally weigh in the plaintiff's favor, as it would provide a reason why the plaintiff might wish to eat at the particular restaurant. *See, e.g.*, *Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at

16

*26 (finding that plaintiffs' desire to return to a New York restaurant was "plausible given the fact that they live in New York and have been to the restaurant in the past").  Here, however, Stern has never stated that he made a reservation to eat at the Hotel's restaurant,[3] tried to eat there, or had any desire or plans to do so in the future.  Indeed, Stern never even alleges that the restaurant itself was inaccessible to him.  Rather, Stern's affidavit, like the Complaint itself, focuses on Stern's purported inability to stay at the Hotel for the night because it lacked accessible accommodations for an overnight stay.  (*See* Stern Aff. ¶ 3.)  The fact that Stern lives in the same city in which the Hotel is located makes it implausible that, in the absence of some particular reason for leaving his own residence, he would wish to use the Hotel as a place to stay.

As to the second factor, the plaintiff's "past patronage" of the defendant's business, Stern does not suggest that he ever previously stayed at the Hotel, patronized the restaurant there, used any of the Hotel's facilities for any reason, or stayed at any other hotel affiliated with the Hotel or under common management.  *See, e.g.*, *D'Lil*, 415 F. Supp. 2d at 1056 (finding that plaintiff lacked standing where plaintiff had never stayed at defendant hotel and had not alleged that she had frequented other Best Western hotels or that she had a preference for Best Western hotels).  As to the third factor, the "definitiveness" of the plaintiff's plans to return, Stern has provided no indication of any specific plans or events that would lead him back to the Hotel.  For example, although he mentions that he sometimes uses the facilities of New York hotels when he is attends conferences or is invited to parties, he does not identify any upcoming conference at the Hotel or party to which he had been invited.  Indeed, it would seem that Stern *cannot*

---

[3] Although Defendant states that the Hotel does not even have its own restaurant, Defendant does not dispute that it leases commercial space on the premises to a restaurant.  (*See* Maloney Aff. ¶ 8.)

17

demonstrate that he had any future intention to use any conference room or ballroom at the Hotel, as the Hotel apparently *has no* conference or ballroom facilities.  (Maloney Aff. ¶ 8.) Under these circumstances, the Court can only assume that the references in Stern's affidavit to "conference rooms" and "ballrooms" constitute mere boilerplate, and have no bearing on this case.

Finally, with regard to the factor of "frequency of travel" near the Hotel, the Court notes that, while Plaintiff states that he "frequently go[es] to hotels in New York" (Stern Aff. ¶ 5), he has presented no evidence as to why, should he need to stay at a New York City hotel, he would choose the particular hotel at issue in this case, over any of the numerous other hotels available to him.  Unlike in *Access 4 All, Inc. v. Trump*, 2006 U.S. Dist. LEXIS 75664, where the court found plaintiff's stated intention to return to Trump Tower to be plausible because that hotel "boasts one of the best locations in the city," and because plaintiff evidenced a desire to return to a specific restaurant in the hotel building, *id.* at *21-22, Stern has offered no explanation here as to why Defendant's Hotel was particularly well-appointed, well-located, or otherwise desirable or convenient for him.  This, too, weighs against a finding of standing.  *See Brother v. Rossmore Tampa L.P.*, No. 8:03-cv-1253-T-24MAP, 2004 U.S. Dist. LEXIS 28524, at *13-14 (M.D. Fla. Aug. 19, 2004) (concluding that "Plaintiff's professed intent to return to Defendant-hotel [was] merely a convenient statement made in an attempt to satisfy the standing requirement," where plaintiff did not explain why he would choose to stay at defendant hotel as opposed to any of the other hotels located in the area and the defendant hotel did not appear to be logical or convenient); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (finding plaintiff's intention to return to the Best Western Deltona Inn implausible where there

were numerous other hotels in the Orlando area that appeared preferable); *Rosenkrantz*, 254 F. Supp. 2d at 1253 (finding that plaintiff lacked standing because he traveled only twice a year and other "countless hotels" were closer to his destination).

Stern's vague, unsupported statements about his desire to return to the Hotel at an unspecified time in the future "to enjoy [him]self as a guest" and "to take advantage of the [H]otel and its amenities" (Stern Aff. ¶¶ 4, 6) are the very type of "some day" intentions that have been found insufficient to demonstrate standing. "Such 'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that [is] require[d]." *Defenders of Wildlife*, 504 U.S. at 564. Apart from these conclusory statements, Stern's affidavit offers only two other reasons why he supposedly intends to return to the Hotel in the future: (1) to assess Defendant's compliance with the Consent Decree in this case, and (2) to update a book that he is writing on accessible accommodations in New York City. (*See* Stern Aff. ¶¶ 4, 6.) Yet neither of these reasons, even if the Court were to accept them as true, would be sufficient to establish standing.

Certainly, Stern's professed intention to return to the Hotel to ensure that Defendant is complying with the Court's January 4, 2005 Final Order entering the Consent Decree (Stern Aff., ¶ 4) cannot confer standing, as a plaintiff's intention to return to the premises at issue must exist at the time the suit is filed. *Friends of the Earth*, 528 U.S. at 190-91. Here, at the time this action was filed in May 2004, Stern could not have intended to return to the Hotel to assess its compliance with the Consent Decree, as the Consent Decree did not yet exist. Moreover, even if Stern had a more general intent of verifying the Hotel's compliance with the ADA, this, in itself,

would not give him standing to sue.  Although Plaintiffs are correct that courts have found that plaintiffs may have standing where they legitimately have a dual motivation for returning to a public accommodation, *i.e.,* to avail themselves of goods and services *and* to verify ADA compliance (*see* Pl. Reply at 10-11; *see also Molski v. Price*, 224 F.R.D. 479, 483-84 (C.D. Cal. 2004) (finding dual motivation permissible); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 227-28 (D.N.J. 2003) (same)), there must be at least some component of direct injury.

For the same reason, Stern cannot demonstrate the necessary "injury in fact" by showing that he intended to return to the Hotel to update his book.  In order to satisfy the injury-in-fact requirement for standing, Stern must show that he would return to the Hotel, *but for* the discriminatory conditions at the establishment, *see Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at *21, or that he will avoid the Hotel because of his awareness of discriminatory conditions, *see Access 4 All, Inc. v. Trump*, 2006 U.S. Dist. LEXIS 75664, at *14.  Because Stern states that he will visit the Hotel *regardless* of whether the Hotel is, or is not, accessible to him (and because, in either eventuality, he will presumably be equally capable of updating his book), his stated intention to return to the Hotel for the purpose of reporting on its condition is insufficient to establish standing.  In short, the purpose of the ADA is to ensure that disabled individuals have access to public accommodations so that they may obtain "the full and equal enjoyment" of those accommodations.  42 U.S.C. § 12182(a).  A person, even if disabled, does not suffer a cognizable injury under the ADA when he plans to visit a premises merely to see if it is in compliance with law, and has no reason to be deterred from that visit, regardless of what he may find there.

Finally, Stern's generalized assertions as to his intention to return to the Hotel in order to enjoy its facilities and services are rendered less plausible by the simple fact that he has served as a named plaintiff in so many similar ADA cases.  In its February 2005 opposition to Plaintiffs' attorneys' fees application, Defendant pointed out that, as of that time, Stern had been a plaintiff in at least 83 ADA suits in the Southern and Eastern Districts of New York, many of which were suits against New York City hotels.  (*See* Kaiman Aff. ¶ 35 and Ex. E thereto.)  The more hotels sued by an individual ADA plaintiff, the less likely it is that the plaintiff will be able to demonstrate a plausible intention to return to each of those hotels in the "imminent" future to enjoy its facilities.  *See, e.g.*, *Arby's Huntington Beach*, 359 F. Supp. 2d at 948 (explaining that the filing of a large number of lawsuits may impact the believability of plaintiff's assertions that he intends to and will return to defendant restaurant); *Rossmore Tampa L.P.*, 2004 U.S. Dist. LEXIS 28524, at *13, 15 n.6 (finding that plaintiff's professed intent to return to defendant hotel lacked credibility where plaintiff had filed over 70 ADA lawsuits and questioning how plaintiff would find time to return to all the places of public accommodation that he had sued).

The potential for abuse of the ADA has been noted in numerous cases in districts throughout the country.  *See Doran v. Del Taco, Inc.*, Case No. SACV 04-046 CJC (Anx), 2006 U.S. Dist. LEXIS 53551, at *15-16 (C.D. Cal. July 5, 2006) (citing cases).  In *Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278 (M.D. Fla. 2004), the court explained that the ADA's statutory scheme, which provides for a private right of action for injunctive relief, has resulted in an explosion of private ADA-related litigation that is primarily driven by the ADA's attorneys' fees provision.  *Id.* at 1281-82 (noting that, in the Middle District of Florida alone, hundreds of Title III cases had been filed by a relatively small number of plaintiffs – and their counsel – who

21

had assumed the role of private attorneys general).  "Courts have referred to this proliferation of ADA lawsuits as a 'cottage industry' and have labeled the plaintiffs who file these lawsuits 'professional plaintiffs,' 'serial plaintiffs,' and 'professional pawns.'"  *Doran v. Del Taco, Inc.*, 2006 U.S. Dist. LEXIS 53551, at *16 (citations omitted).  In *Doran v. Del Taco, Inc.*, 2006 U.S. Dist. LEXIS 53551, the court explained that the "ability to profit from ADA litigation has led some law firms to send disabled individuals to as many businesses as possible in order to have them aggressively seek out all violations of the ADA."  *Id.* at *17 (citing *Doran v. Del Taco, Inc.*, 373 F. Supp. 2d 1028, 1030 (C.D. Cal. 2005)).  Then, rather than informing the businesses of the violations and attempting to remedy them, lawsuits are filed, as "[p]re-suit settlements, after all, do not vest plaintiffs' counsel with an entitlement to attorney's fees under the ADA," *Tiger Partner*, 331 F. Supp. 2d at 1375 (internal quotation marks and citation omitted).  The result is that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)."  *Id.*

Ensuring that standing requirements are met by each plaintiff in each lawsuit brought under the ADA enables courts to ensure that the ADA is not being abused, but rather is having its intended effect of allowing disabled persons to participate fully in society.  *Doran v. Del Taco, Inc.*, 2006 U.S. Dist. LEXIS 53551, at *19.  Given the nature of Stern's submitted affidavit, which is framed in conclusory terms and consists of little more than boilerplate, Stern has plainly failed to sustain his burden of demonstrating that, at the time the suit was filed, and but for the Hotel's alleged ADA violations, he had a plausible, specific intention or desire to return to the Hotel in the imminent future, to avail himself of its services.  Thus, Stern has not

met his burden of demonstrating an injury in fact, as required to show standing. Accordingly, I recommend that the Court find that Stern lacks standing to sue in this case.

### D.    Associational Standing of Access 4 All

As discussed above (*see* Section I.B., *supra*), to establish associational standing, an organization must establish that at least one of its members has standing to sue in his or her own right. *See Hunt*, 432 U.S. at 343; *Warth*, 422 U.S. at 511. Accordingly, an organization's failure to demonstrate that at least one of its members has standing to sue is fatal to that organization's associational standing. *See Lamb v. Charlotte County*, 429 F. Supp. 2d 1302, 1311 (M.D. Fla. 2006) (citing *Nat'l Alliance for the Mentally Ill v. Bd. of County Comm'rs of St. John's County*, 376 F.3d 1292, 1296 (11th Cir. 2004)); *Small*, 388 F. Supp. 2d at 98 (explaining that "associational standing exists only insofar as organization members have standing"). As I recommend that the Court find that Stern lacks standing, and Access 4 All's standing is predicated upon Stern's standing in this case, I recommend that the Court find that Access 4 All also lacks standing.

### CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Court find that Plaintiffs lack standing, that the Consent Decree be vacated, and that Plaintiffs' pending application for attorneys' fees be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Kimba M. Wood, United States Courthouse, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
       December 11, 2006

Respectfully Submitted.

_____
DEBRA FREEMAN
United States Magistrate Judge

24

<u>Copies to</u>:

Hon. Kimba M. Wood, U.S.D.J.

Lawrence A. Fuller, Esq.
Fuller, Fuller & Associates, P.A.
12,000 Biscayne Blvd., Suite 609
North Miami, FL  33181

Nelson M. Stern, Esq.
964 Third Avenue, 5th Floor
New York, NY  10155

Franklin R. Kaiman, Esq.
5 East 17th Street, 2nd Floor
New York, NY  10003